## BARNARD and others *v.* HART and others.

*(Circuit Court, D. Massachusetts.   August 14, 1880.)*

1. WRIT OF ENTRY—MESNE PROFITS.—Where judgment has been recovered under a writ of entry, the demandants are entitled to *mesne* profits from the date of the tenant's entry, where it had been expressly stipulated that the transfer of the property should not prejudice or impair the right of the demandants in and to the title and possession of the property, and the tenants claimed title adverse to the demandants from the date of their entry.

*John C. Gray, Jr., John C. Ropes* and *William Caleb Loring,* for demandants.

*Thornton K. Lothrop* and *William S. Hall,* for tenants.

NELSON, D. J.   This is a writ of entry by the assignees in bankruptcy of the Boston, Hartford & Erie Railroad Company, against the trustees, under a mortgage known as the Berdell mortgage, on the road of the company, to secure land not included in the mortgage.   The tenants pleaded *nul disseisin.*   Judgment has been rendered for the demandants for the parcel of land in Boston known as French's wharf, described in the first count of the writ, and for the tenants on all the other counts.   The case was then referred to an assessor to determine the mesne profits due to the demandants for the detention of French's wharf.   The assessor has made his report, and has found that the mesne profits from August 17, 1871, the time when the tenants entered into possession, to March 15, 1873, the date of the writ, were $13,413.50, and that the mesne profits since the date of the writ were $25,283.51.   That the demandants are entitled to the latter sum is not denied.   The only question now before the court is whether they are entitled to the former sum—that is, the mesne profits which accrued after the tenants' entry, and before the bringing of this action.

On July 20, 1870, a bill in equity was filed in the supreme judicial court of Massachusetts to foreclose the Berdell mortgage; and on August 20, 1870, receivers were appointed in that suit, who took possession of all the property of the company, whether covered by the mortgage, or not including French's wharf.   During the pendency of the foreclosure suit the railroad company, upon a petition filed October 20, 1870, was adjudged bankrupt by the United States district court for this district.   On May 7, 1871, the state court passed a decree that the mortgage should be foreclosed, and that the receivers should deliver into the possession and control of the tenants, as trustees under the mortgage, all the property in their hands and possession, or under their management and control.   On the seventeenth of August, 1871, the receivers delivered, and the tenants entered into possession, under the

.decree. The assessor reports that French's wharf adjoins the location of the railroad, and was occupied by the tenants from August 17, 1871, until after the date of the writ, as a part of their railroad terminus in Boston.. The demandants were not made parties to the foreclosure suit, but at the time of the transfer of the property from the receivers to the tenants the latter signed, under seal, and delivered to the demandants, paper "E," which is as follows:

"Whereas, the undersigned have been appointed trustees of the Berdell mortgage of the Boston, Hartford & Erie Railroad Company; and, whereas, certain persons have been or may hereafter be appointed assignees in bankruptcy of said company; and, whereas, it is deemed for the interest of all the creditors of said corporation that the property of said corporation heretofore placed in the hands of receivers appointed by the courts of Massachusetts, Connecticut, and Rhode Island should be transferred to said trustees; and, whereas, said assignees forbear to oppose said transfer of said entire property to said trustees, and in consideration thereof, and for divers other good and valuable considerations, in thereto moving, we, the undersigned, in our said capacity, stipulate and agree that the decrees in any of said courts, heretofore or hereafter made, transferring said property to us, as aforesaid, shall not prejudice or impair the right of said assignees in bankruptcy in and to the title or possession of any of said property.

"Witness our hands and seals this twelfth day of August, A. D. 1871."

The demandants accepted the paper, and forebore to make any opposition to the decrees, or to the transfer of the property to the tenants. The assessor reports as follows: "I find that. the tenants claimed title from the date of the entry, August 17, 1871; that the demandants wished the tenants to take possession, and were understood by the tenants to assent to their doing so, subject to whatever was reserved by said agreement 'E;' and that the demandants assented to the terms of said agreement 'E.' I do not find one way or the other as to the existence of a license apart from the following

ruling; but I rule, as a matter of law, that said agreement 'E' does impart an assent of the demandants to the tenants taking possession of the premises, and that the agreement of the tenants that the 'decrees' shall not prejudice the demandants' 'rights to the possession' does not so far qualify the demandants' assent as to leave the tenants liable as tort-feasors. I therefore rule that the demandants cannot recover mesne profits prior to the date of the writ." To this ruling the demandants except.

The argument of the tenants in support of this ruling is that, to entitle the demandants to recover mesne profits, the possession of the tenants must be shown to have been a tortious possession; that agreement "E" imparts a license on the part of the demandants that the tenants might enter and occupy; that having entered and occupied by the license of the demandants their acts were not wrongful, and had not the elements of tort; and that their plea of *nul disseisin* is conclusive as to their tortious possession at the date of the writ, but not before. The objection to this reasoning is twofold: *First.* The agreement provides in express terms that the transfer of the property to the tenants shall not prejudice or impair the right of the demandants in and to the title and possession of the property. This reservation must include what is incident to the title and possession: the right to the use and profits of the premises. *Second.* The assessor finds that the tenants claimed title adverse to the demandants from the date of their entry. This finding excludes the idea that the tenants were in possession by license of the demandants, or in subordination to their title, and must be construed as a finding that the possession of the tenants from their first entry was adverse to the demandants, and was a disseisin. It thus appears that the disseisin of the tenants continued from the time of their entry until after the date of the writ. This being so, the conclusion is that the demandants are entitled to recover the mesne profits from the date of the tenants' entry.

The judgment of the court is: *Demandants' exceptions sustained, and the demandants to have judgment for mesne profits from August 17, 1871, as found by the assessor.*